IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

DALLAS NAUMAN,

    Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

    Defendant.

No. 5:18-cv-06159-NKL

## ORDER

Plaintiff Dallas Nauman seeks review of the decision by Defendant denying his claim for Supplemental Security Income. For the reasons set forth below, the Court affirms the ALJ's decision.

## I. BACKGROUND

Nauman filed an application for Supplemental Security Income on July 13, 2016 and Disability Insurance Benefits on August 12, 2016 under Titles XVI and II of the Social Security Act, respectively. Tr. 155–59, 163–64. Nauman claims he became disabled on June 18, 2016,[1] Tr. 30, and listed the following causes of his disability: chronic nausea, stomach and abdomen pain, lymphoma stomach cancer in remission, digestive issues, frequent vomiting, multiple stomach surgeries, chronic fatigue and confusion, problems with bending, stooping, standing, and walking, and weakness in his lumbar back, Tr. 185. Shortly after his alleged onset date, he reported taking, pursuant to prescriptions, Baclofen for pain, Norco, Pepcid and Viokase for digestive

---

[1] Nauman originally claimed he became disabled April 7, 2015, Tr. 156, but Mr. Nauman amended his alleged onset date during his hearing before the ALJ, Tr. 30.

1

issues, Promethazine and Zofran for nausea, Xanax for anxiety and Pamelor for depression. Tr. 188. He has an eighth-grade education level and had worked in construction for approximately 20 years, but he stopped working in 2013 due to his condition. Tr. 186–87.

The Administrative Law Judge (ALJ) concluded, after a hearing, that Plaintiff had the following severe impairments: left hip fracture, status post pinning, osteoarthritis of the right thumb, gastroesophageal reflux disease, gastroparesis, pancreatitis, reactive gastropathy, peptic ulcer disease, sun sensitivity, history of fibromyalgia/myofasciitis, history of chronic obstructive disorder, learning disorder, alcohol abuse/dependence, and cognitive neurological disorder due to past chemotherapy. Tr. 13. The ALJ nonetheless concluded that Nauman retained the residual functional capacity ("RFC") to perform work as follows:

> sedentary work . . . including the ability to lift and carry up to 10 pounds occasionally, stand and/or walk up to 2 hours in an 8 hours workday, and sit up to 6 hours in an 8 hour workday. The claimant can never climb ladders, ropes or scaffolds, balance, kneel, crouch or crawl, but he can occasionally climb ramps and stairs, and stoop. The claimant can frequently handle and finger with the right hand. He must avoid extreme cold weather, extreme heat, exposure to sunlight, humidity, and excessive vibration. The claimant must avoid irritants, such as fumes, odors, dust, gases and poorly ventilated areas. He must also avoid operational control of moving machinery, unprotected heights and hazardous machinery. Due to his mental impairments, the claimant is limited to simple, routine and repetitive tasks, which may required detailed instructions, but do not involve complex tasks. The work must be in an environment free of fast-paced production requirements and involve only simple, work-related decision, and few, if any, work place changes. He cannot have any interaction with the public. He can work around co-workers, but he can have only occasional interaction with co-workers.

Tr. 14. Based on the testimony of a vocational expert, the ALJ concluded that Nauman's RFC would allow him to work as a lens inserter, wire wrapper, and production checker—jobs that exist in significant numbers in the national economy. Tr. 19. The ALJ therefore concluded that Nauman was not under a "disability" as that term is defined in the Act. Tr. 10–20. As the Appeals Council subsequently denied Plaintiff's request for review, Tr. 1–4, the ALJ's decision constitutes the final decision of the Commissioner subject to judicial review.

## II. STANDARD

The Court must affirm the Commissioner's denial of social security benefits "if substantial evidence in the record as a whole supports the ALJ's decision." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). "Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). "[A]s long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted). The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

## III. DISCUSSION

Nauman argues that the ALJ failed to provide reasons supported by substantial evidence for discounting the opinion of Nauman's treating oncologist and an examining phycologist, and that the ALJ failed to develop the record as to Nauman's mental abilities before formulating an RFC assessment. Nauman contends that these errors make the RFC deficient, and therefore remand is appropriate.

The RFC is "the most a claimant can still do despite [his] physical or mental limitations." *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019) (quoting 42 U.S.C. § 404.1520(a)(1)). An RFC must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quotations omitted). In determining the RFC, "a

treating physician's opinion is generally entitled to substantial weight," but such an opinion "does not automatically control in the face of other credible evidence on the record that detracts from that opinion." *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010) (quoting *Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir. 2009)). When "discount[ing] a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Id*.

Dr. Raj Rangineni, Nauman's treating oncologist, provided the following medical opinions: a brief letter dated January 8, 2014, Tr. 610; a check-the-box form titled "MEDICAL SOURCE STATEMENT – MENTAL" and a similar "MEDICAL SOURCE STATEMENT – PHYSICAL" that was accompanied by a written explanation of Nauman's treatment and symptoms, each dated October 13, 2016, Tr. 528–33; and another set of source statements similar to those submitted in October 2016 that were dated December 5, 2017, Tr. 543–48.

These opinions generally advised that Nauman could occasionally lift up to 10 pounds, occasionally use his hands or arms, stand for up to two hours in a day and sit for four hours, but would need to change positions every 15 minutes, would require frequent breaks, would be off-task 25% of the time and absent at least four days per month. Tr. 532–33, 544–45. The ALJ afforded "partial weight" to Dr. Rangineni's opinion, incorporating his recommended limits on lifting, standing and walking in the RFC, but not Dr. Rangineni's recommendations regarding nonexertional limits, Nauman's ability to sit or be on task, or Dr. Rangineni's opinion regarding Nauman's likely absences from work. Tr. 17. The ALJ concluded that, unlike the some of the physical limitations set forth by Dr. Rangineni,

> the limitations in sitting and other nonexertional limitations that would warrant a finding of disability are not supported by the mild objective findings on examination or tests. The claimant even testified that he does not really have issues with sitting. Further, the limitations regarding sitting, being off task and having frequent absences are not supported by Dr. Ragineni's [sic] his own treatment notes or the overall evidence. Moreover, these opinions are often vague and conclusory

4

statements without any medical findings to support them. . . . Furthermore, Dr. Ragineni indicated in January 2014 that the claimant had treated lymphoma with chemotherapy and radiation therapy and continues to have chronic issues with pancreatitis and pain . . . but this statement is not an opinion and was made well before the claimant's alleged amended onset date and not regarding the pertinent period.

Tr. 17.

Nauman contends that the ALJ erred by failing to specify which tests or examinations the ALJ deemed mild and inconsistent with Dr. Rangineni's opinion or how they related to Nauman's functioning, particularly with respect to Nauman's gastroparesis. Doc. 9, p. 11. However, in discussing Nauman's allegations regarding his abdomen, nausea and vomiting, the ALJ compared two upper GI endoscopies, and noted that despite new complaints of diarrhea in 2017, the test returned essentially the same findings and did not result in additional treatment. Tr. 15, 642–43, 656–57. The ALJ also considered a CT scan of Nauman's abdomen and pelvis, which showed mild prominence of the proximal small bowel without evidence of high-grade obstruction and no mass, and concluded that the results did not support additional physical restrictions. Tr. 15, 741. The ALJ also emphasized that Nauman usually reports levels of pain between 2 and 4, where 10 is the highest, and also indicated that his pain medication improves his functioning. Tr. 16, 292–320, 612–24. Regarding Nauman's hip fracture, the ALJ discussed x-rays showing screw fixation and satisfactory alignment, Tr. 16, 555, 557, and found that objective evidence consistent with Nauman's own reports to his doctor that he was "doing well" with "no complaints." Tr. 502–04. Finally, the ALJ noted that an MRI of the brain was inconsistent with Nauman's alleged memory problems. Tr. 16, 561. Thus, the ALJ both specified which objective tests or examinations were inconsistent with the more restrictive limitations set forth in Dr. Rangenini's opinion.

Second, Nauman argues that the ALJ erred by failing to indicate what evidence contradicted, or failed to support, Dr. Rangineni's opinion regarding Nauman's ability to sit, stay

5

on task and be present at work. Doc. 9, p. 12. However, in addition to the evidence discussed above regarding Nauman's digestive issues and pain, the ALJ highlighted evidence in the record indicating that Nauman spent much of 2016 doing construction work and concluded that such work "suggest[s] that [Nauman] is much more physically capable than alleged." Tr. 16–17, B20F/1,10,16. This analysis supports the ALJ's conclusions that parts of Dr. Rangineni's opinion are not supported by the record.

More specifically, Nauman argues Dr. Rangineni's opinion regarding ability to stay on task and be present is supported by Dr. Rangineni's documentation of Nauman's digestive issues and records showing that Nauman was treated by a gastroenterologist and pain management specialist. However, Dr. Rangineni's records generally show only mild complaints, if any, regarding gastrointestinal issues. *See, e.g.,* Tr. 749–50 ("Denies any nausea or vomiting. No constipation. Mild diarrhea . . . Complains of mild diarrhea at this point" in January 2017), 760 ("Denies any nausea or vomiting. No constipation. No diarrhea" in December 2016), 769 (same in October 2016), 264 (same in March 2015), 276 (same in November 2014 but adding "Abdominal pain in left flank area"), 290 ("No constipation, No diarrhea. Nausea. Abdominal pain post pancreatitis, improving" in July 2014). Moreover, records from Nauman's pain specialist indicate that medication managed and controlled Nauman's pain, Tr. 16, and records from Nauman's gastroenterologist show that Zofran and Phenergan treat Nauman's nausea "pretty well," Tr. 659. Finally, the treatment recommended by Nauman's gastroenterologist suggests that Nauman's conditions are mild. Tr. 643 ("Discharge patient to home. Await pathology. Return to my office in 6 months."), 647 ("Use fiber, for example Citrucel, Fibercon, Konsyl or Metamucil."), 653 (prescribing dicyclomine for abdominal pain and diarrhea, noting that Nauman "is not particularly

compliant with dietary modification for his gastroparesis" but to continue with Zofran as needed), 657 ("discharge patient to home. Gastroparesis diet. Use metoclopramide.").

Therefore, the ALJ provided reasons for discounting portions of Dr. Rangineni's opinion regarding Nauman's physical limitations, and those reasons were adequately supported by the record as a whole.

With respect to his mental limitations, Nauman argues that the ALJ erred by finding Dr. Rangineni's opinion regarding Nauman's confusion and memory problems to be outside Dr. Rangineni's area of expertise and argues that the ALJ failed to specify what kind of mental health treatment would have supported Dr. Rangineni's opinion. Dr. Rangineni advised that Nauman suffers from memory lapses and confusion, conditions that may be related to his past chemotherapy. Tr. 531, 543. He further noted that some of the medications prescribed for Nauman's physical conditions cause drowsiness. Tr. 531, 543. Based on these issues, Dr. Rangineni advised that Nauman has marked limitations in his ability to understand and remember and his ability to maintain sustained concentration and persistence. As with his opinions regarding Nauman's physical limitations, Dr. Rangineni further advised that Nauman would be "off task" approximately 25% of the time or more and miss four days of work per month. Tr. 528–29, 547–48.

The ALJ gave "little weight" to Dr. Rangineni's opinion regarding Nauman's mental limitations. Tr. 17. Specifically, the ALJ said that confusion and memory lapses "are not medical diagnoses, as indicated, and are opinions regarding mental symptoms, which are outside [Dr. Rangineni's] area of expertise." *Id.* The ALJ also found that the "limitations regarding . . . being off task and having frequent absences are not supported by . . . his own treatment notes or the overall evidence," stated that "[t]he medical evidence of record contains little to no

7

contemporaneous medical health treatment notes supporting such restrictive limits, but only contains Medical Source Statements" based on subjective evidence, and described Dr. Rangineni's opinion as conclusory. *Id.* However, the ALJ noted that Dr. Rangineni's opinion had not been ignored, *id.*, and limited the Nauman's RFC to simple, routine and repetitive tasks in an environment that is free of fast-paced production requirements and requires only simple, work-related decisions. Tr. 14.

There is substantial evidence in the record as a whole to support the ALJ's decision to discount, in part, Dr. Rangineni's opinion on mental limitations. First, Dr. Rangineni's opinion relied on Nauman's subjective complaints. Tr. 16. With respect to Nauman's subjective account of his symptoms, the ALJ specifically provided reasons to conclude the severity of his limitations were not as great as Nauman alleged. The ALJ repeatedly relied on his ability to work various temporary jobs. Tr. 16–18. As noted above, the record reflects that Nauman was "working regularly over the summer doing construction" in 2017, Tr. 612, and appears to have been working since at least as early as December 2016, Tr. 618, 621. Based in part on this evidence, the ALJ concluded that Nauman was, indeed, able to work after his alleged onset date, and that his mental limitations did not preclude him from "performing simple, routine, and repetitive work" as described in the RFC. Tr. 16. Especially because this time frame coincides with the time in which Nauman first reported his confusion, Tr. 797, the record supports the ALJ's conclusion that Nauman's confusion and memory issues were not disabling.[2]

---

[2] The Court would reach the same conclusion even if the ALJ erred by discounting Dr. Rangineni's opinion based on his lack of mental health expertise. Given the other reasons for the ALJ's decision to discount Dr. Rangineni's opinion, it is clear that any such error is harmless.

For similar reasons, the Court finds the ALJ's decision to discount the opinion of Bill Graham, PhD, is supported by substantial evidence. This is especially so given the extreme limitations contained in Dr. Graham's opinion. (Tr. 18, 537-539)

Finally, Nauman argues that the ALJ should have developed the record with respect to his mental limitations before determining the RFC. According to Nauman, additional development is required because the ALJ found that Nauman had cognitive and psychiatric conditions that constitute severe impairments, and the ALJ discounted the medical source opinions that addressed Nauman's mental limitations. However, while a claimant's "RFC is a medical question that must be based on 'some medical evidence[,]'" *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016), it need not be supported by a specific medical opinion. *Myers*, 721 F.3d at 526–27. Here, the ALJ incorporated portions of the medical source opinions in to the RFC—but only those that were supported by the medical evidence and the record as a whole—and made a determination that is supported by substantial evidence. Accordingly, the ALJ did not err by failing to further develop the record.

## IV. <u>CONCLUSION</u>

Because it is supported by substantial evidence in the record as a whole, the Court affirms the ALJ's decision.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: <u>August 29, 2019</u>
Jefferson City, Missouri

9